**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

------------------------------------------------------------X

BIANCA CHANCY, on behalf of herself and
others similarly situated,

                        Plaintiff,

    v.

MOODS CAFE I, INC., KARLYLE
MOOLENAAR, and JOANNE FITZGERALD,

                    Defendants.

------------------------------------------------------------X

**REPORT AND RECOMMENDATION**

25-CV-4733 (AMD) (LGD)

**LEE G. DUNST**, Magistrate Judge:

Plaintiff Bianca Chancy ("Plaintiff" or "Chancy"), individually and on behalf of others similarly situated, commenced this action on August 26, 2025, pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and New York Labor Law ("NYLL") §§ 650 *et seq.*, alleging that her former employers—Moods Cafe I, Inc. ("Moods Cafe"), and its owners and operators, Karlyle Moolenaar ("Moolenaar") and Joanne Fitzgerald ("Fitzgerald") (collectively, "Defendants") — failed to pay her minimum and overtime wages, failed to pay her spread-of-hours compensation, failed to timely remit her wages, unlawfully retained the tips she earned, and failed to provide her with wage notices and statements. *See generally* Electronic Case Filing ("ECF") No. 1.[1]

Defendants never responded to the Complaint. Plaintiff thereafter obtained a certificate

---

[1] This case was originally filed as a class action suit, but Plaintiff's default judgment motion (ECF No. 21) seeks relief only on her own behalf. The undersigned thus considers Plaintiff's request for class action certification waived. *See e.g.*, *Gomez Cruz v. Ding Feng Lin Constr. LLC*, No. 24-CV-2657, 2025 WL 2933201, at *5 (E.D.N.Y. Aug. 15, 2025), *report and recommendation adopted*, 2025 WL 2602265 (E.D.N.Y. Sept. 9, 2025); *Cortez v. Brand Name 99 Cents & Up Corp.*, No. 24-CV-5262, 2025 WL 1251297, at *1 n.2 (S.D.N.Y. Apr. 30, 2025).

of default against them and, on January 9, 2026, moved for default judgment (the "Motion").

*See* ECF No. 21.  On January 12, 2026, District Judge Ann M. Donnelly referred the Motion to

the undersigned for a Report and Recommendation.  *See* Electronic Order dated January 12,

2026.  For the reasons below, the undersigned recommends that the Court grant in part and deny

in part Plaintiff's Motion.

## I.   BACKGROUND[2]

### A.  Factual Background

Plaintiff is a former bartender at Moods Cafe, a New York corporation that operated as a

restaurant at 269 West Merrick Road in Valley Stream.  *See* ECF No. 1 ¶¶ 6, 8, 10, 18–19.  At all

relevant times, Moods Cafe "had an annual gross volume of sales made or business done of not

less than $500,000," and was an "enterprise engaged in commerce or in the production of goods

for commerce."  *Id.* ¶ 4.

Individual Defendants Moolenaar and Fitzgerald were the co-owners and operators of

Moods Cafe.  *See id.* ¶¶ 11–12.  Fitzgerald, the co-owner of Moods Cafe who held the

business's liquor license, had the power to "hire and fire" Plaintiff.  *See id.* ¶ 13.  Moolenaar

managed Plaintiff's work schedule, calculated her wages, and distributed her tips via payment

applications like Zelle and Cash App.  According to Plaintiff, "Moolenaar and Fitzgerald

exercised operational control over Moods Cafe and possessed the power to affect the terms and

conditions of [Chancy's] employment," such that they were employers withing the meaning of

the FLSA and NYLL.  *See id.* ¶¶ 13, 17.

Plaintiff worked at Moods Cafe from January 2023 to March 2025, completing tasks such

---

[2] The following facts are taken from Plaintiff's Complaint (ECF No. 1), the Motion (ECF No. 21), and documents filed in support of the Motion (ECF Nos. 22–27).  These facts are assumed to be true for the purposes of this Motion.  *See, e.g., Jimenez v. Green Olive Inc.*, 744 F. Supp. 3d 221, 234–35 (E.D.N.Y. 2024) (collecting cases).

as "lifting and carrying cases of liquor, beer, and other stock; stocking refrigerators and cleaning shelves; and cleaning the bar area." *Id.* ¶ 28.  Plaintiff's shifts regularly lasted thirteen hours.  *Id.* ¶¶ 27, 30, 33.  From January to August 2023, Plaintiff worked an average of four shifts (or fifty-two hours) per week, whereafter she worked an average of two shifts (or twenty-six hours) per week.  *See id.* ¶¶ 27, 30, 33–34; *see also* ECF No. 24 ("Chancy Decl.") ¶¶ 7, 9.

Plaintiff's pay varied while working at Moods Cafe.  From January 2023 to December 11, 2024, Plaintiff was paid $50.00 per shift.  *See* ECF No. 1 ¶ 21.  After December 11, 2024, Plaintiff was paid $100.00 per shift.  *See id.* ¶ 23.  Plaintiff was paid these flat rates, regardless of the hours she worked, and all payments were made in cash.  *See id.* ¶¶ 21, 23.

According to Plaintiff, Defendants consistently failed to properly pay her.  Plaintiff's regular hourly rate—when compared to the number of hours that she worked—fell "substantially below the applicable federal and New York State minimum wage[s]."  ECF No. 1 ¶ 32.  Despite working fifty-two hours per week for the first eight months of her employment, Defendants did not pay Plaintiff an overtime premium.  *See id.*  Additionally, because Plaintiff's shifts "exceeded ten hours, [she] was entitled to an extra 'spread of hours' pay, which [she] never received."  Chancy Decl. ¶ 8; *see also* ECF No. 1 ¶ 29.  Similarly, Defendants never provided Plaintiff with a wage notice when she was hired, nor wage statements with each payment of her wages.  *See* ECF No. 1 ¶¶ 20, 25.[3]

Finally, Plaintiff alleges that Defendants failed to remit most of the tips that she earned during her shifts.  *See id.* ¶ 36.  Moolenaar—who regularly communicated with Plaintiff via text messages—occasionally sent her tips through Cash App and Zelle, acknowledging and

---

[3] Plaintiff's Complaint also asserts a claim for failure to pay timely wages under the NYLL.  *See* ECF No. 1 ¶¶ 106-108; *see also* N.Y. Lab. L. § 191.  As explained below, the undersigned finds that Plaintiff has abandoned this claim.  *See infra* Section III.C.10.

promising to repay the outstanding amounts.  *See id.* ¶¶ 35, 37–41.  On July 23, 2024, Moolenaar sent Plaintiff a text message acknowledging that Moods Cafe owed her $14,157.80 in tips.  *See id.* ¶ 38.  Defendants never remitted the outstanding tips. *See id.* ¶ 35; Chancy Decl. ¶ 13.

On March 24, 2025, Moolenaar offered Plaintiff $300.00 to partially satisfy the outstanding tip balance.  *See* Chancy Decl. ¶ 14; ECF No. 24-1 at 17 (exhibit including text messages).  Plaintiff refused, responding that she was "not taking 300," and "if [she did not] get" all outstanding tips by "tomorrow [she was not] coming in."  ECF No. 24-1 at 17; *see also* Chancy Decl. ¶ 14.  Plaintiff ended her employment on March 25, 2025.  ECF No. 1 ¶ 42.

**B.  Procedural Background**

Plaintiff commenced this action on August 26, 2025.  *See* ECF No. 1.  Defendants failed to respond, and the Clerk of the Court entered default against them on December 3, 2025.  *See* ECF No. 17.  On January 9, 2025, Plaintiff filed her Motion (ECF No. 21), which Judge Donnelly thereafter referred to the undersigned for a Report and Recommendation.  *See* Electronic Order dated January 12, 2026.  Plaintiff has served the Motion and supporting documents (ECF No. 27), as well as multiple Court orders on Defendants (ECF Nos. 18, 20, 28, 30, 32, 33), but they have neither appeared nor responded.  Defendants also failed to appear for two telephonic Status Conferences on March 11 and March 31, 2026.[4]  *See* ECF Nos. 29, 31.

Plaintiff Motion seeks default judgment to be entered jointly and severally for $51,972.28 in unpaid minimum wages, overtime wages, and spread-of-hours pay; $14,157.80 in unpaid tips; $66,130.08 in liquidated damages; $10,000.00 in statutory penalties pursuant to NYLL §§ 195(1), 195(3); $10,025.00 in attorneys' fees and $1448.00 costs; and pre- and post-judgment

---

[4] Plaintiff's counsel also failed to appear for the March 11, 2026 Status Conference.  *See* ECF No 29. The Court rescheduled the Status Conference for March 31, 2026.  *See id.*  Plaintiff's counsel attended the second status conference.  *See* ECF No. 31.

interest.  *See* ECF No. 25.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 55 prescribes a two-step process for obtaining a default judgment.  FED. R. CIV. P. 55(a)–(b).  First, the movant must obtain a certificate of default from the Clerk of the Court.  *Id.* 55(a). Once default has been entered, then, at the plaintiff's request, the Clerk must enter default judgment if "the plaintiff's claim is for a sum certain or a sum that can be made certain by computation." *Id.* 55(b)(1).  If calculating damages requires an exercise of discretion, the plaintiff may instead move the Court to enter a default judgment.  *Id.* 55(b)(2).

In evaluating a default judgment motion, the Court "must ensure that (1) jurisdictional requirements are satisfied; (2) the plaintiff took all the required procedural steps in moving for default judgment; and (3) the plaintiff's allegations, when accepted as true, establish liability as a matter of law." *Cooper v. Fire & Ice Trucking, Corp.*, No. 23-CV-1675, 2024 WL 3344001, at *3 (E.D.N.Y. July 9, 2024).

The Court also must find "a basis for the damages specified in the default judgment." *Jeremiah v. 5 Towns Jewish Times, Inc.*, No. 22-CV-5942, 2023 WL 5703698, at *5 (E.D.N.Y. Sept. 5, 2023).  "While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Esquivel v. Lima Rest. Corp.*, No. 20-CV-2914, 2023 WL 6338666, at *12 (E.D.N.Y. Sept. 29, 2023) (quoting *Bricklayers & Allied Craftworkers Loc. 2 v. Moulton Masonry & Const.*, LLC, 779 F.3d 182, 189 (2d Cir. 2015)).  The Court must satisfy itself that Plaintiff has met the burden of proving damages to a "reasonable certainty." *Jimenez v. Green Olive Inc.*, 744 F. Supp. 3d 221, 252 (E.D.N.Y. 2024).

5

### III.   DISCUSSION

#### A.  Jurisdiction

The Court "may not enter a default judgment unless it has both subject-matter jurisdiction over the action and personal jurisdiction over each defendant."  *Cooper*, 2024 WL 3344001, at *3 (*citing Covington Indus., Inc. v. Resintex A.G.*, 629 F.2d 730, 732 (2d Cir. 1980)).

##### 1.  Subject Matter Jurisdiction

As alleged in the Complaint, Plaintiff is pursuing claims under the FLSA for unpaid minimum and overtime wages, as well as tip violations (counts one through three).  *See* ECF No. 1 at ¶¶ 1, 71–86; *see also* 29 U.S.C. §§ 203(m)(2)(b), 206, 207.  Thus, the Court has federal question jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. § 1331.  *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the . . . laws . . . of the United States.").  The Court may also exercise supplemental jurisdiction over Plaintiff's NYLL claims (counts four through ten) under 28 U.S.C. § 1367(a), because they arise out of the same facts and circumstances as the FLSA claims.  *See, e.g., McLaughlin v. Onanafe Mgmt. Sols. LLC*, No. 22-CV-6792, 2024 WL 4184485, at *3 (E.D.N.Y. Sept. 14, 2024), *report and recommendation adopted*, 2024 WL 4355485 (E.D.N.Y. Sept. 30, 2024) (exercising "supplemental jurisdiction over [the] [p]laintiff's NYLL claims because they [arose] out of the same facts and circumstances as the FLSA claims").

##### 2.  Personal Jurisdiction

Personal jurisdiction must comport with state law and the United States Constitution.  *See Relevant Sports, LLC v. U.S. Soccer Fed'n, Inc.*, 61 F.4th 299, 305 (2d Cir. 2023) (analyzing personal jurisdiction under New York law and the Due Process Clause).  New York law authorizes personal jurisdiction over domestic corporations doing business—as well as

individuals who are domiciled—in New York.  *See* N.Y. C.P.L.R. § 301; *Patel v. Patel*, 497 F. Supp. 2d 419, 424 (E.D.N.Y. 2007) ("[T]he traditional bases of jurisdiction covered by [N.Y. C.P.L.R. § 301] include physical presence, domicile, consent, and corporate presence by virtue of a defendant 'doing business' in New York.").  Further, constitutional due process requirements are satisfied where a corporation is sued in its state of incorporation or principal place of business and an individual is sued in their place of domicile.  *See EZ Drop Shipping, LLC v. Alfrey*, No. 24-CV-522, 2024 WL 4250326, at \*4 (E.D.N.Y. Aug. 23, 2024) (describing circumstances where "general personal jurisdiction" satisfies the Due Process Clause).

Defendant Moods Cafe was a New York corporation operating a restaurant and bar located in Valley Stream, New York.  *See* ECF No. 1 ¶¶ 8–10, 14, 28; *Alfrey*, 2024 WL 4250326, at \*4.  Thus, the Court may exercise personal jurisdiction over Moods Cafe in accordance with state law and the Due Process Clause.

Plaintiff does not allege individual Defendants Moolenaar and Fitzgerald's domiciles.  Nevertheless, Plaintiff alleges that Moolenaar and Fitzgerald resided in New York, that they transacted business as corporate owners and operators of Moods Cafe, and that they were involved in the daily operations of the New York-based restaurant and bar.  *See* ECF No. 1 at ¶¶ 11-16.  Thus, the Court is satisfied that it may exercise personal jurisdiction over Moolenaar and Fitzgerald in accordance with state law and the Due Process Clause.  *See* N.Y. C.P.L.R. § 301; *Alfrey*, 2024 WL 4250326, at \*4.

**B.  Procedural Requirements**

Plaintiff must satisfy certain procedural requirements to succeed on her default judgment motion.  First, Plaintiff must prove that she properly served Defendants pursuant to the Federal Rules of Civil Procedure, and that the Clerk of Court properly entered a certificate of default.

7

*See Cooper*, 2024 WL 3344001, at *5.  Next, plaintiffs in the Eastern District of New York must adhere to this District's Local Civil Rule 55.2 (hereinafter "Local Rule 55.2").  *See* E.D.N.Y. Loc. Civ. R. 55.2.

### 1.  Federal Rule of Civil Procedure 4

The Court finds that Plaintiff has properly served the Summons and Complaint on each defendant.  Under Rule 4(e)(1) and 4(h)(1)(A), a party may serve individuals and corporations in accordance with the rules of the "state where the district is located or where service is made." FED. R. CIV. P. 4(e)(1); *id.* 4(h)(1)(A).

### a.  Defendant Moods Cafe, Inc.

Plaintiff served Moods Cafe by leaving a copy of the Summons and Complaint with "Ms. Jayg," a "Manager who specifically stated that he/she was authorized to accept service on behalf of the Corporation."  ECF No. 15.

New York law allows personal service on a corporation through "an officer, director, managing or general agent, or cashier or assistant cashier or to any other agent authorized by appointment or by law to receive service."  N.Y. C.P.L.R. § 311(a).  Serving a "manager" is not always sufficient; courts distinguish between "managers" and "managing agents" for the purposes of service.  *See Joe Hand Promotions, Inc. v. Crisis Bar LLC*, No. 21-CV-6563, 2023 WL 2969308, at *4 (E.D.N.Y. Jan. 19, 2023) (collecting cases).  "Where a process server does not include the basis for the belief that a recipient of process holds a relevant position or title, a court may reject the service as insufficient."  *Id.*

Nevertheless, New York courts have interpreted N.Y. C.P.L.R. § 311(a) broadly, as a "process server cannot be expected to know the corporation's internal practices."  *Fashion Page, Ltd. v. Zurich Ins. Co.*, 50 N.Y.2d 265, 272 (1980); *see also Dunn v. Pallett*, 66 A.D.3d 1179,

8

1180–81 (N.Y. App. Div. 2009) (explaining that the "[New York] Court of Appeals has declined to read the statute in a narrow and technical manner, stating instead that the statute should be liberally construed" (internal citations and quotation marks omitted)).  Even if a person lacks express authority to accept service for a corporation, "if service is made in a manner which, objectively viewed, is calculated to give the corporation fair notice, the service should be sustained." *Fashion Page*, 50 N.Y.2d at 272; *see also M'Baye v. World Boxing Ass'n*, 429 F.Supp.2d 652, 657 (S.D.N.Y. 2006) ("Courts have held that when a process server serves someone who does not have express authorization to accept service for a corporation, service is proper under N.Y.C.P.L.R. § 311 if it is made in a manner which, objectively viewed, is calculated to give the corporation fair notice of the suit." (internal quotation marks and citation omitted)).

"In tendering service, the process server may rely upon the corporation's employees to identify the individuals authorized to accept service." *Joe Hand Promotions*, 2023 WL 2969308, at *4 (E.D.N.Y. Jan. 19, 2023) (quoting *Old Republic Ins. Co. v. Pac. Fin. Servs. of Am., Inc.*, 301 F.3d 54, 57 (2d Cir. 2002)).  Further inquiry is unnecessary so long as the process server's reliance on the corporate employee's representations are reasonable.  *Kemp v. A & J Produce Corp.*, No. 00-CV-06050, 2005 WL 5421296, at *22 (E.D.N.Y. June 7, 2005), *aff'd*, 164 F. App'x 12 (2d Cir. 2005) ("Service on a corporation is sufficient when made upon an individual who stands in such a position as to render it fair, reasonable and just to imply the authority on his part to receive service." (internal quotation marks and citations omitted)); *see also Dunn*, 66 A.D.3d at 1180–82 (finding that "further inquiry" by a process server was unnecessary where the server had "reasonabl[y]" relied on an employee's representation that they were a "manager" authorized to accept service). "[W]hen the corporation is regularly doing business in [New

York], it generally cannot be heard to complain that the summons was delivered to the wrong person when the process server has gone to its offices, made proper inquiry of the defendant's own employees, and delivered the summons according to their directions." *Fashion Page*, 50 N.Y.2d 265 at 273; *see also Aguilera v. Pistilli Const. & Dev. Corp.*, 63 A.D.3d 765, 767 (N.Y. App. Div. 2009) (sustaining service on a corporation where a non-employee "seated behind the cashier/reception desk . . . informed the process server that [the non-employee] could accept service").

Here, the process server relied on Ms. Jayg's representation that she was a "Manager" who was authorized to accept service for Moods Cafe. *See* ECF No. 15. Relying on Ms. Jayg's statements was reasonable; nothing in the record indicates that she lacked the authority to accept service. Ms. Jayg—a senior employee of Moods Café—was well-suited to put Defendants on notice of this lawsuit. Additionally, the two owners of Moods Cafe, Moolenaar and Fitzgerald, were also served. *See* ECF Nos. 13, 14. Given the small size of the business, service on these individuals reinforced corporate notification. *See Joe Hand Promotions*, 2023 WL 2969308, at *4 (noting that individual service on the two owners of a corporation "heled assure corporate notification"). Defendants have not appeared and, operating a New York business, cannot "complain" that serving Ms. Jayg was insufficient. *See Fashion Page*, 50 N.Y.2d at 273; *see also Pain Mgmt. Ctr. of New Jersey, P.C. v. All Car Rent-A-Car*, 57 Misc. 3d 138(A), *1 (N.Y. App. Term. 2017) (upholding service on the "manager" of a corporation who allegedly stated she was "authorized to accept legal papers" where the corporation "failed to rebut the factual allegations made in the process server's affidavit of service").

Thus, the undersigned finds that Plaintiff properly served Moods Cafe with the Summons and Complaint.

### b. Defendants Karlyle Moolenaar and Joanne Fitzgerald

Plaintiff served Defendants Moolenaar and Fitzgerald through substituted service on a co-worker and co-tenant, respectively. *See* ECF No. 13 (Affirmation of Service for Defendant Fitzgerald); ECF No. 14 (Affirmation of Service for Defendant Moolenaar).

New York law permits substituted service on an individual defendant by, among other things, "delivering the summons . . . to a person of suitable age and discretion" at the defendant's "actual place of business, dwelling or usual place of abode." Within twenty days thereafter, the summons must be mailed to the defendant at the relevant location. *See id.* Service is complete ten days after proof of service is filed. *See id.*

Plaintiff served Defendant Moolenaar by leaving a copy of the Summons and Complaint with Ms. Jayg at Moolenaar's "actual place of business," Moods Cafe. *See* ECF No. 14. Ms. Jayg, an employee and co-worker of Moolenaar, was suited to accept service on Moolenaar's behalf. *See Templos v. Luna Cuisine, Inc.*, 738 F. Supp. 3d 325, 331 (E.D.N.Y. 2024) ("The suitability of the person served depends on context, but courts routinely find service on employees and co-workers sufficient."). Plaintiff timely mailed the Summons and Complaint to Moolenaar's business address and filed proof of service on the docket. *See* ECF No. 14.

Plaintiff served Defendant Fitzgerald by delivering a copy of the Summons and Complaint to Mr. Jones, a co-tenant, at her home address. *See* ECF No. 13. Mr. Jones, an adult co-tenant of Fitzgerald, was permitted to accept service on Fitzgerald's behalf. *See United States v. Golfinopoulos*, No. 15-CV-3220, 2020 WL 9814060, at *3 (E.D.N.Y. Feb. 14, 2020) (allowing substituted service on a "co-tenant of suitable age and discretion" at the defendant's "last known address"). Plaintiff timely mailed the Summons and Complaint to Fitzgerald's home address and filed proof of service on the docket. *See* ECF No. 13.

11

Accordingly, the undersigned finds that Plaintiff properly served Defendants Moolenaar and Fitzgerald pursuant to N.Y. C.P.L.R § 308(2).

### 2.  Entry of Default

The Court next finds that the Clerk of Court properly entered a certificate of default against Defendants.  Plaintiff served Defendants Moods Cafe and Fitzgerald on September 5, 2025, and Defendant Moolenaar on September 8, 2025.  *See* ECF Nos. 13, 14, 15.  Moods Cafe and Moolenaar were required to respond to the Complaint by September 26, 2025, and Fitzgerald by September 29, 2025.  *See* FED. R. CIV. P. 12(a)(1)(A)(i). After Defendants failed to respond, Plaintiff requested a certificate of default.  *See* ECF No. 16 (request for certificate of default). The Clerk of the Court found Defendants in default on December 3, 2025.  *See* ECF No. 17 (entry of default).

### 3.  Local Rule 55.2

The Court also finds that Plaintiff has complied with the procedural requirements of Local Rule 55.2.  Local Rule 55.2 sets forth the procedural requirements for seeking a default judgment.  "Courts within this District generally require strict compliance with the Local Rules." *Amador v. 109-19 Food Corp.*, No. 21-CV-4633, 2025 WL 1032031, at *11 (E.D.N.Y. Mar. 14, 2025), *report and recommendation adopted*, 2025 WL 1031133 (E.D.N.Y.Apr. 7, 2025).  "In many cases, failure to comply with Local Civil Rule 55.2 is a basis to deny a motion for default judgment." *Id.* (cleaned up).

#### a.  Local Rule 55.2(a)(1)(A)–(C)

First, the movant must file an affidavit or declaration showing (1) that the Clerk of the Court entered default, (2) that the movant has complied with the Servicemembers Civil Relief Act, 50a U.S.C. § 521 ("SCRA"), and (3) that the party against whom judgment is sought is not

known to be a minor or incompetent person.  *See* E.D.N.Y. Loc. Civ. R. 55.2(a)(1)(A)–(C).

Plaintiff has met these requirements.  *See* ECF No. 23 ("Rissmiller Decl.") ¶ 10 (supporting declaration noting Plaintiff's compliance with the SCRA, and affirming that none of the defendants are an infant, absentee, or incompetent); ECF Nos. 23-3, 23-4 (affidavits of service for Summons and Complaint stating that individual Defendants Fitzgerald and Moolenaar are not engaged in military service); ECF No. 23-5 (Clerk's certificate of default attached to declaration).

### b.  Local Rule 55.2(a)(2)–(3)

Next, the movant must file (1) a memorandum of law, (2) a proposed order detailing the proposed judgment to be entered, and (3) a certificate of service stating that all documents in support of the motion, including the Clerk's Certificate of Default, have been personally served on or mailed to the last known residence (for an individual) or business address (for a company).  *See* E.D.N.Y. Loc. Civ. R. 55.2(a)(2)–(3).

Plaintiff has satisfied each of these requirements.  *See* ECF No. 22 (memorandum of law); ECF No. 26 (proposed order); ECF No. 27 (certificate of service of default judgment papers on each defendant).

### c.  Local Rule 55.2(c)

Finally, the movant must file "a statement of damages, sworn or affirmed to by one or more people with personal knowledge, in support of the request, showing the proposed damages and the basis for each element of damages, including interest, attorney's fees, and costs." E.D.N.Y. Loc. Civ. R. 55.2(c).

Plaintiff has met these requirements.  *See* ECF No. 23-7 (attorney billing records); ECF No. 23-8 (receipts detailing service costs); ECF No. 25 (statement of damages).

### C. Liability

Assuming that the jurisdictional and procedural prerequisites to entering a default judgment have been met, the Court must "assess whether Plaintiff's well-pleaded factual allegations establish Defendants' liability as a matter of law." *Cooper*, 2024 WL 3344001, at *6.

#### 1. Statute of Limitations

As a threshold matter, the undersigned considers whether Plaintiff's claims are timely under the applicable statute of limitations.

The FLSA's statute of limitations is two years, "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). "When a defendant defaults, the violation is considered willful and the three-year statute of limitations applies." *Flores v. Andy Constr. NY Inc.*, No. 22-CV-6486, 2024 WL 2940191, at *7 (E.D.N.Y. Apr. 14, 2024), *report and recommendation adopted*, 2024 WL 3914859 (Aug. 23, 2024) (quoting *Esquivel*, 2023 WL 6338666, at *5). The statute of limitations for NYLL claims is six years. *See* N.Y. Lab. L. §§ 198(3), 663(3). "Both statutes start to run when the employee begins working for the employer." *Jimenez*, 744 F.Supp.3d at 245.

Here, Plaintiff filed her Complaint on August 26, 2025, and Defendants defaulted on December 3, 2025. *See* ECF No. 1 (Complaint); ECF No. 17 (entry of default). Because Plaintiff's employment began in January 2023 (*see* ECF No. 1 ¶¶ 18, 42), Plaintiff's claims are timely.

#### 2. Employer-Employee Relationship Under the FLSA and NYLL

To establish FLSA and NYLL liability,[5] Plaintiff must prove that an employer-employee

---

[5] Courts in the Second Circuit have interpreted employer-employee relationships under the NYLL coextensively with the FLSA. *See, e.g., Vasquez v. Bolla Operating L.I. Corp.*, No. 22-CV-7014, 2025 WL

relationship between existed herself and each Defendant.  *Cooper*, 2024 WL 3344001, at *6–7 (assessing employer-employee relationship on motion for default judgment).  The FLSA defines "employee" as "any individual employed by an employer," 29 U.S.C. § 203(e)(1), and "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d).

To evaluate employer status, courts in the Second Circuit assess the "economic reality" of the relationship between the plaintiff and defendant.  *See Irizarry v. Catsimatidis*, 722 F.3d 99, 104–05 (2d Cir. 2013).  Under the "economic reality" test, courts consider "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."  *Id.* at 105 (quoting *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 142 (2d Cir. 2008)); *see also Xia v. 62-98 Realty LLC*, No. 19-CV-1203, 2024 WL 5181633, at *5–6. (E.D.N.Y. Dec. 19, 2024) (describing economic reality test factors).  Courts must consider the totality of the circumstances; no single factor is dispositive.  *See Saleem v. Corp. Transportation Grp., Ltd.*, 854 F.3d 131, 139 (2d Cir. 2017).

In addition to the economic reality test, individual defendants who are owners, officers, or otherwise make corporate decisions on behalf of a defendant company must have "operational control" over the company "in a manner that relates to the plaintiff's employment."  *See Irizarry*, 722 F.3d at 109–10.  An individual defendant "exercises operational control over employees if his or her role within the company, and the decisions it entails, directly affect the nature or conditions of the employees' employment."  *Id*. at 110.  To establish operational control, "the relationship between the individual's operational function and the plaintiffs' employment must

---

1029391, at *3 (E.D.N.Y. Feb. 25, 2025), *report and recommendation adopted*, 2025 WL 957555 (Mar. 31, 2025). Thus, the Court analyzes this issue in accordance with the FLSA's definitions.

be closer in degree than simple but-for causation." *Id.*

Plaintiff claims that she worked for Moods Cafe as a bartender from January 2023 to March 2025. *See* ECF No. 1 ¶¶ 18, 22–23, 42. Plaintiff further claims that Defendants Moolenaar and Fitzgerald "exercised operational control over Moods Cafe and possessed the power to the power to affect the terms and conditions of Chancy's employment." ECF No. 1 ¶ 13. Fitzgerald, who owned the liquor license for Moods Cafe, was responsible for setting Plaintiff's compensation—which increased from $50 to $100 per shift in December 2024—and could "hire and fire" Plaintiff. *Id.* ¶¶ 14; 22-23. Moolenaar managed Plaintiff's work schedule (which was modified in September 2023), calculated her wages, and distributed her through Zelle and Cash App. *See id.* ¶ 13, 27, 34–36; ECF No. 24-1 (attaching screenshots of Plaintiff's Cash App transaction history with Moods Cafe). Finally, Plaintiff cites text messages between Moolenaar and herself from March 2024 to February 2025, wherein he acknowledged that Moods Cafe owed her "thousands of dollars in unpaid tips" and intermittently promised to repay her. ECF No. 22 at 2–3; *see also* ECF No. 24-1 at 5, 7–19 (attaching screenshots of text messages between Moolenaar and Chancy).

Some of these allegations rehash the economic reality test factors in a conclusory fashion and, standing alone, are insufficient. *See, e.g., Jurado v. Sabor Hispano, Inc.*, No. 20 CV-1104, 2021 WL 11690645, at *8 (E.D.N.Y. Aug. 5, 2021) (finding that the plaintiff's "boilerplate allegations that simply recite[d] the elements of the economic reality test" were "insufficient to establish that [the plaintiff] was employed by [the d]efendants" on a motion for default judgment). As for Moolenaar, however, Plaintiff includes multiple text messages between herself and Moolenaar, in which he acknowledged her outstanding tips and promised to repay her. *See* ECF No. 24-1 at 5, 7–19. Plaintiff further alleges that Moolenaar occasionally remitted

16

tips via Zelle and Cash App.  *See* ECF No. 1 ¶ 34; ECF No. 24-1 at 6.  Under Moolenaar's supervision, Plaintiff's work schedule was effectively halved in September 2023.  *See* ECF No. 22 at 2.  These allegations demonstrate that Moolenaar controlled Plaintiff's working conditions, schedule, and manner of payment, which bear on factors two and three of the economic reality test.  *See Reyes v. Bellerose Halal Meat Inc.*, No. 21-CV-6413, 2025 WL 2664258, at *9 (E.D.N.Y. Sept. 17, 2025) (finding that individual defendants who, among other things, "had the power to determine rates and methods of pay" were the plaintiff's "employers"); *Cooper*, 2024 WL 3344001, at *7 (finding that an employer-employee relationship existed where, among other things, the "business's owner and manager[] set [the p]laintiff's work schedule").

According to Plaintiff, Fitzgerald—as the corporate co-owner of Moods Cafe who held the business's liquor license—had the power to "hire and fire" Plaintiff.  *See* ECF No. 1 ¶ 13. Under Fitzgerald's management, Plaintiff's pay purportedly increased from $50 to $100 per shift in December 2024.  *See Zurita v. 3275 Chicken Corp.*, No. 24-CV-9364, 2026 WL 636853, at *3 (S.D.N.Y. Mar. 6, 2026) (determining that an employer-employee relationship existed where the "[d]efendants set [the plaintiff's] work schedule and rate of pay and retained the power to hire and fire him"); *Garcia et al. v. Magnotta et al.*, No. 25-CV-390, 2026 WL 1072058, at *4 (E.D.N.Y. Feb. 26, 2026), *report and recommendation adopted*, 2026 WL 877606 (E.D.N.Y. Mar. 31, 2026) (finding that two restaurant owners who, among other things, made "hiring and firing decisions" were covered by the FLSA).  These allegations demonstrate that Fitzgerald could alter Plaintiff's rate of pay, as well as hire and fire Plaintiff, in accordance with factors one and three of the economic reality test.

Thus, the undersigned finds that Defendants Moods Cafe, Moolenaar, and Fitzgerald are "employers" with the meaning of the FLSA and NYLL.

### 3. FLSA Coverage[6]

Next, Plaintiff must show that the FLSA covers her employment relationship. Coverage exists if Plaintiff either (1) was personally "engaged in commerce or in the production of goods for commerce," (individual coverage) or (2) was "employed in an enterprise engaged in commerce or in the production of goods for commerce" (enterprise coverage). 29 U.S.C. §§ 206(a), 207(a)(1). For enterprise coverage, the employer must have both "annual gross volume of sales made or business done [of] not less than $500,000," and have "employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person." *Id.* § 203(s)(1)(A)(i)–(ii).

The undersigned finds that Plaintiff's employment relationship is covered by the FLSA because Defendant Moods Cafe was an "enterprise engaged in commerce." Plaintiff alleges that for all relevant times, Moods Cafe "had an annual gross volume of sales made or business done of not less than $500,000." ECF No. 1 ¶ 4. In addition, Plaintiff's work involved goods produced for commerce; she was tasked with "lifting and carrying cases of liquor, beer, and other stock; stocking refrigerators and cleaning shelves; and cleaning the bar area."

Plaintiff's allegations are mostly conclusory. However, when considering a default judgment motion, courts in this District generally accept as true in allegations that a corporate defendant had gross annual revenues exceeding $500,000, even if those allegations are conclusory. *See, e.g., Borja v. MSK Rest. Corp.*, No. 22-CV-6178, 2025 WL 951402, at *11 (E.D.N.Y. Mar. 13, 2025), *report and recommendation adopted*, 2025 WL 948122 (Mar. 29,

---

[6] Unlike the FLSA, the NYLL does not have a coverage requirement. *See, e.g., Borja v. MSK Rest. Corp.*, No. 22-CV-6178, 2025 WL 951402, at *13 (E.D.N.Y. Mar. 13, 2025), *report and recommendation adopted*, 2025 WL 948122 (Mar. 29, 2025) ("Unlike the FLSA, the NYLL does not have a minimum revenue requirement or necessitate participation in interstate commerce."). Thus, because the Court finds that an employment relationship exists, Plaintiff's NYLL claims reach Defendants.

18

2025) (finding conclusory allegation that defendant restaurant "had gross annual revenue in excess of $500,000" throughout the litigation to be sufficient on motion for default judgment).

Moreover, courts in this District generally infer that a restaurant "engages in interstate commerce by nature of the restaurant enterprise itself." *Trejo v. Blanca's Bakery & Deli Inc.*, No. 23-CV-6063, 2025 WL 1029523, at *9 (E.D.N.Y. Jan. 8, 2025), *report and recommendation adopted as modified*, 2025 WL 850625 (Mar. 19, 2025); *see also Brito v. Marina's Bakery Corp.*, No. 19-CV-828, 2022 WL 875099, at *8 (E.D.N.Y. Mar. 24, 2022) ("[I]t is reasonable to infer that the tools and goods required to operate a restaurant engaging in interstate commerce of more than $500,000 do not exclusively come from New York State."); *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 33 (E.D.N.Y. 2015) ("[I]t is reasonable to infer that [a restaurant] requires a wide variety of materials to operate, for example, foodstuffs, kitchen utensils, cooking vessels, cleaning supplies, paper products, furniture, and more . . . [and] that some of these materials moved or were produced in interstate commerce.").

Accordingly, the undersigned finds that Plaintiff has sufficiently alleged enterprise coverage.

### 4. Applicability of FLSA Exemptions

Certain categories of employees are exempt from the FLSA's wage and hour requirements—for example, executive, administrative, and professional employees. *See* 29 U.S.C. § 213(a)(1). Plaintiff, however, claims that she worked for Defendants as a bartender (*see* ECF No. 1 ¶¶ 18, 28), and nothing in the Complaint or Motion suggests that any statutory exemption applies. Thus, the Court assumes that Plaintiff is a nonexempt employee covered by the FLSA.

Finding these threshold requirements satisfied, the Court considers whether Defendants'

alleged conduct violated the FLSA and NYLL.

### 5. Minimum Wages Under the FLSA and NYLL

The FLSA requires that employers pay an employee a minimum hourly wage for each hour the employee works. *See* 209 U.S.C. § 206(a)(1). "When a state's minimum wage is higher than the federal minimum wage, the employer must pay the state minimum wage to satisfy the FLSA's minimum wage requirement." *Sevilla v. House of Salads One LLC*, No. 20-CV-6072, 2022 WL 954740, at *5 (E.D.N.Y. Mar. 30, 2022) (citing 29 C.F.R. § 778.5). The federal minimum wage has been $7.25 per hour since 2009. *See* 209 U.S.C. § 206(a)(1)(C). However, Defendants were required to pay New York's higher minimum wage which, from 2023 to 2025, ranged from $15.00 to $16.50 per hour. *See* N.Y. Lab. L. §§ 652(1)(b), 652(1-a)(b).

"For purposes of determining whether [the p]laintiff was paid the prevailing minimum wage, the Court must determine [their] regular hourly rate of pay." *Cooper*, 2024 WL 3344001, at *8. Plaintiff, a former bartender working at a restaurant, is covered by New York's Hospitality Industry Wage Order ("HIWO"). *See Rowe v. CC Rest. & Bakery, Inc.*, No. 17-CV-1423, 2019 WL 4395158, at *8 (E.D.N.Y. Aug. 15, 2019), *report and recommendation adopted*, 2019 WL 4393987 (E.D.N.Y. Sept. 13, 2019) ("As a restaurant worker, [the p]laintiff indisputably worked in the hospitality industry."); *Teoh v. Manhasset Rest., LLC*, No. 22-CV-4110, 2025 WL 3225038, at *1 (E.D.N.Y. Nov. 18, 2025), *report and recommendation adopted,*, 2026 WL 865841 (E.D.N.Y. Mar. 30, 2026) (noting that a "covered" hospitality employee includes, subject to certain exceptions, "'any individual suffered or permitted to work in the hospitality industry by the operator of the establishment or by any other employer'" (quoting N.Y. Comp. Codes R. & Regs. Tit. 12, § 146-3.2(a) (2025))). The HIWO provides that a

hospitality employee's regular hourly rate is calculated by dividing their weekly rate by "the lesser of 40 hours or the actual number of hours worked by that employee during the work week." N.Y. Comp. Codes R. & Regs. Tit. 12, § 146-3.5(b).

From January 1, 2023, to December 11, 2024, Plaintiff was paid $50 per shift. *See* ECF No. 1 at ¶ 21. Thereafter, Plaintiff was paid $100 per shift. *See id.* ¶ 23. Accounting for the September 2023 decrease in Plaintiff's work schedule to two shifts (or twenty-six hours) per week, Plaintiff's regular hourly rate can be broken down as follows:

TABLE 1. PLAINTIFF'S REGULAR HOURLY RATE AND APPLICABLE NYLL MINIMUM WAGE RATES

| Time period | Weekly Rate | Weekly Hours Worked | Regular Hourly Rate (Weekly Rate/Lesser of 40 Hours or the Amount of Hours Actually Worked) | New York Minimum Wage |
|---|---|---|---|---|
| Jan. 1., 2023 – Aug. 31, 2023 | $200 | 52 | $5.00 | $15.00 |
| Sept. 1, 2023 – Dec. 31, 2023 | $100 | 26 | $3.85 | $15.00 |
| Jan. 1, 2024 – Dec. 11, 2024 | $100 | 26 | $3.85 | $16.00 |
| Dec. 12, 2024 – Dec. 31, 2024 | $200 | 26 | $7.69 | $16.00 |
| Jan. 1, 2025 – Mar. 25, 2025 | $200 | 26 | $7.69 | $16.50 |

As seen in Table 1, Plaintiff's regular hourly rate ranged from $3.85 to $7.69 per hour between 2023 to 2025—far below New York's minimum wage rates from 2023 to 2025. *See* N.Y. Lab. L. §§ 652(1)(b), 652(1-a)(b).

Accordingly, the undersigned finds that Defendants are liable for violations of the FLSA's and NYLL's minimum wage provisions.

### 6. Overtime Wages Under the FLSA and NYLL

Plaintiff claims unpaid overtime wages under the FLSA (count two) and NYLL (count five). ECF No. 1 ¶¶ 62–71, 80–84. The FLSA and the NYLL's implementing regulations require an employer to pay an employee an overtime premium of one and one-half times the

21

employee's regular rate for each hour the employee works above forty in a workweek. *See* 29 U.S.C. § 207(a)(1); N.Y. Comp. Codes R. & Regs. tit. 12, §§ 142-2.2, 146-1.4.

The plaintiff must prove "that he or she was improperly compensated for the work he or she performed." *Cooper*, 2024 WL 3344001, at *8 (citing *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 362 (2d Cir. 2011)). In the default judgment context, however, "the bar to establish a plaintiff's hours worked is low," and "the court may presume that the plaintiff's recollection and estimates of the hours he worked are accurate." *Amador*, 2025 WL 1032031, at *19; *see also Jimenez*, 744 F. Supp. 3d at 249 ("[I]t would be unfair to require more substantial proof of improper compensation when the defendant is not participating in the case and the plaintiff lacks the ability to obtain the defendant's employment records through discovery.").

Here, Plaintiff has sufficiently alleged that Defendants violated the FLSA and NYLL's overtime pay provisions. Plaintiff alleges that from January 2023 to December 11, 2024, Defendants paid her $50 per shift. *See* ECF No. 1 ¶¶ 21, 23. Plaintiff further alleges that from January through August 2023, she worked an average of fifty-two hours per week. *See id.* ¶¶ 30–32. Although she averaged twelve weekly hours of overtime work from January to August 2023, Plaintiff claims that Defendants paid her the flat rate of $50 per shift. By paying Plaintiff a flat rate per shift, despite her substantial overtime work, Defendants failed to pay the required overtime premium. *See* 29 U.S.C. § 207(a)(1); N.Y. Comp. Codes R. & Regs. tit. 12, §§ 142-2.2, 146-1.4.

### 7. Tip Violations Under the FLSA and NYLL

Plaintiff alleges that Defendants unlawfully retained her tips in violation of the FLSA (count three) and NYLL (count six). *See* ECF No. 1 ¶¶ 82–86, 91–93.

The FLSA provides, in relevant part, that "[a]n employer may not keep tips received by

22

its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit."  29 U.S.C. § 203(m)(2)(B).  The NYLL similarly proscribes employers from "demand[ing] or accept[ing], directly or indirectly, any part of the gratuities, received by an employee, or retain[ing] any part of a gratuity or of any charge purported to be a gratuity for an employee."  N.Y. Lab. Law § 196-d.  "The test for whether an individual is an 'employer' forbidden from keeping employee's tips under the FLSA and NYLL is the same as the one used to assess individual liability" pursuant to FLSA.  *Borja v. MSK Rest. Corp.*, 2025 WL 951402, at *15 (quoting *Managhas v. Eight Oranges Inc.*, No. 22-CV-4150, 2024 WL 4555669, at *18 (S.D.N.Y. Oct. 22, 2024)).

Because Defendants are considered "employers" under the FLSA and NYLL (*see supra* Section III.C.2), they were barred from keeping or retaining any tips.  Plaintiff's Motion attaches text messages with Moolenaar \ from March 2024 to February 2025, in which he repeatedly acknowledged that Moods Cafe owed tips to Plaintiff in varying amounts and promised to repay her.  *See* ECF No. 24-1 at 5, 7–19.  On July 23, 2024, Moolenaar sent Plaintiff a text message acknowledging that Moods Café owed her $14,157.80 in tips—all of which she claims are outstanding.  *See id.* at 12; *see also* Chancy Decl. ¶¶ 12–13.  Coupled with Plaintiff's declaration (ECF No. 24), the undersigned finds that these text messages are sufficient to establish that Defendants unlawfully withheld some of her tips.  *See Kargar v. Kamolov*, No. 22-CV-664, 2025 WL 4063721, at *15 (S.D.N.Y. Dec. 16, 2025), *report and recommendation adopted*, 2026 WL 149786 (S.D.N.Y. Jan. 20, 2026) (relying in part on "WhatsApp messages" to determine "that management withheld most of the tips that [the employees] earned").

Thus, the undersigned recommends that Defendants be held liable for unlawfully

23

withholding tips under the FLSA and NYLL.

### 8. Spread-of-Hours Pay Under the NYLL

New York law requires employers to pay an employee a "spread-of-hours" premium equal to one additional hour's pay at the basic minimum hourly rate for each workday that lasts longer than ten hours. N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4. "Although this provision only applies to those who are paid minimum wages . . . pursuant to the Hospitality Industry Wage Order, hospitality workers are entitled to spread of hours pay regardless of their regular rate of pay." *Chavez v. Roosevelt Tropical Corp.*, No. 23-CV-2413, 2024 WL 4244087, at *8 (E.D.N.Y. Aug. 21, 2024), *report and recommendation adopted*, 2024 WL 4242218 (E.D.N.Y. Sept. 18, 2024); *see also* N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.6(d).

Plaintiff, as a former bartender covered by the HIWO, is entitled to spread-of-hours wages. *See Rowe*, 2019 WL 4395158, at *8. Plaintiff alleges that for the entire duration of her employment, she worked thirteen-hour shifts. *See* ECF No. 1 ¶¶ 27, 29–30, 33–34; Chancy Decl. ¶¶ 3, 7–9. Plaintiff further avers that Defendants never paid her spread-of-hours wages. *See* ECF No. 1 ¶ 33; Chancy Decl. ¶¶ 8–9. These allegations are sufficient to establish that Defendants violated New York's spread-of-hours requirement. *See Chavez*, 2024 WL 4244087, at *8 (finding allegations that the plaintiff "worked 11.5 hours every day but did not receive any spread of hours pay" sufficient to establish that the defendants "did not comply with New York's spread of hours requirement for that period").

### 9. Wage Notice and Statement Violations Under the NYLL

Plaintiff claims that Defendants failed to provide her with a wage notice (count seven) and wage statements (count eight) in violation of the NYLL. *See* ECF No. 1 ¶¶ 94–101.

The NYLL requires that each employer "provide his or her employees . . . at the time of

hiring, a notice containing" information about, among other things, the employee's regular and overtime rate of pay, allowances claimed, and regular pay days. *See* N.Y. Lab. L. § 195(1)(a). After the employee is hired, the employer must "furnish [the] employee with a statement with every payment of wages" that includes, among other things, the rate(s) of pay, deductions and allowances, gross and net wages, and the dates covered by the paid wages. *See id.* § 195(3). "The NYLL provides for statutory damages for violations of this law." *Gomez Cruz v. Ding Feng Lin Constr. LLC*, No. 24-CV-2657, 2025 WL 2933201, at *18 (E.D.N.Y. Aug. 15, 2025), *report and recommendation adopted*, 2025 WL 2602265 (E.D.N.Y. Sept. 9, 2025) (citing N.Y. Lab. L. §§ 198(1-b), 198(1-d)).

Even if an employer fails to provide a wage notice or statement, employees are not automatically entitled to statutory damages. *See id.* Employees must have standing to pursue these claims, meaning that they must prove a "concrete and particularized" injury-in-fact. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021); *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 64 (2d Cir. 2012) ("It is well established that 'a plaintiff must demonstrate standing for each claim [s]he seeks to press.'" (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 335 (2006))). Technical violations of the NYLL's wage statement and notice provisions are insufficient to establish injury-in-fact. *See, e.g.*, *Sanchez v. Ms. Wine Shop Inc.*, 643 F. Supp. 3d 355, 373 (E.D.N.Y. 2022) (recommending dismissal of a wage statement claim where the plaintiff "merely allege[d] that [the d]efendants failed to provide [him] with wage statements, upon each payment of his wages, as required by NYLL § 195(3)" (internal quotation marks and citation omitted)).

Rather, the Second Circuit has held that "a plaintiff must show some causal connection between the lack of accurate notices and the downstream harm." *Guthrie v. Rainbow Fencing*

25

*Inc.*, 113 F.4th 300, 308 (2d Cir. 2024).  Following *Guthrie*, courts have found that an employee can establish standing through demonstrating that "by failing to provide the required wage statements, the employer was able to hide its violations of wage and hour laws and thus prevent the employee from determining and seeking payment for the precise amount of [their] unpaid wages." *Roma v. David Carmili, Physician, P.C.*, 761 F. Supp. 3d 481, 490 (E.D.N.Y. 2024) (collecting cases) (cleaned up).

Here, Plaintiff alleges that Defendants' failure to provide a wage notice or wage statements "deprived [her] of critical information regarding her pay," prevented her from "verify[ing] the accuracy of her pay," kept her "unaware of the minimum wage and [her] right to overtime compensation," and "hindered [her] ability to recognize and seek remedy for Defendants unlawful wage practices" or "seek timely redress for the underpayments."  ECF No. 1 ¶¶ 97, 101.  Plaintiff further avers that she was left "to reconstruct her earnings through personal records and Defendants' sporadic text messages."  ECF No. 22 at 10.  Plaintiff's inability to decipher or verify the accuracy of her wages—the result of Defendants failure to provide a wage notice or wage statements—is sufficient to establish standing.

On the merits, Plaintiff alleges that Defendants failed to provide "an accurate statement of wages with every payment of wages" or furnished a notice detailing "*inter alia*, rate or rates of pay . . . , [her] regularly hourly rate, [and her] overtime rate of pay."  ECF No. 1 ¶¶ 95–96, 99–100.  Taken as true, these allegations are sufficient to establish Defendants' liability under the NYLL's wage notice and wage statement provisions.  *See* N.Y. Lab. L. §§ 195(1), 195(3).

### 10.  Plaintiff's Abandoned Claim: Failure to Timely Pay Wages Under the NYLL

Plaintiff's Complaint asserts a claim for failure to pay timely wages under NYLL § 191 (count ten).  *See* ECF No. 1 ¶¶ 106–108; *see also* N.Y. Lab. L. § 191.  However, this claim is not

mentioned in the memorandum of law (ECF No. 22), statement of damages (ECF No. 25), or proposed order (ECF No. 26) accompanying the Motion.  Plaintiff attaches the Complaint as an exhibit to the Motion (*see* ECF No. 24-1) but is otherwise silent as to her NYLL § 191 claim.

 Accordingly, the undersigned recommends that the Court deny Plaintiff's Motion as to her Section 191 claim.  *See Yagui et al. v. Republic Bar and Lounge, Inc. et al.*, No. 25-CV-2674, 2026 WL 1296762, at *9 (E.D.N.Y. May 12, 2026) (deeming abandoned the plaintiff's claims "violations of the timely payment provision of NYLL § 191 . . . because those claims were not raised in her motion for default judgment").

## IV. DAMAGES AND OTHER REMEDIES

Because Plaintiff has established Defendants' liability for all but her NYLL § 191 claim, the Court must determine whether Plaintiff is entitled to the relief she requests.

"While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Esquivel*, 2023 WL 6338666, at *12 (quoting *Bricklayers*, 779 F.3d at 189).  In an FLSA and NYLL case, the court may "presume the accuracy of [a plaintiff's] recollection and estimates of hours worked set forth in their affidavits and damages calculations," and "[the] plaintiff need not compute FLSA damages with precision." *Amador*, 2025 WL 1032031, at *27 (cleaned up).  However, the Court must be satisfied that Plaintiff "has met the burden of proving damages to the Court with reasonable certainty.'" *G & G Closed Cir. Events, LLC v. Clayton*, 779 F. Supp. 3d 317, 336 (E.D.N.Y. 2025) (citation omitted).

The undersigned addresses herein damages for each of Plaintiff's claims, applying the applicable statutory or regulatory formula, reviewing Plaintiff's calculations, and making adjustments as necessary to arrive at the proper award.

27

### A. Minimum Wage Damages

As explained above, the NYLL and HIWO require calculation of a restaurant worker's regular hourly rate by dividing the worker's weekly rate by the lesser of forty hours or the actual hours worked. N.Y. Comp. Codes R. & Regs. Tit. 12, § 146-3.5(b); *see also Chavez*, 2024 WL 4244087, at *7 (calculating regular hourly rate). The undersigned already has determined that Plaintiff's regular hourly rate fell below the applicable minimum wage throughout the entirety of her employment. *See supra* Table 1. The total amount of underpayment for minimum wages during this time is calculated by taking the difference between Plaintiff's regular hourly rate of pay and the applicable New York minimum wage, and multiplying that figure by the lesser of forty hours per week or the hours actually worked. *See* N.Y. Lab. L. § 663(1); *see also Chavez*, 2024 WL 4244087, at *10 (calculating unpaid minimum wages). Thus, the Court's calculation of the Plaintiff's unpaid minimum wages are as follows:

TABLE 2. PLAINTIFF'S MINIMUM WAGE DAMAGES

| Time period | Total Weeks | Weekly Hours Worked[7] | Hourly Under-payments | Weekly Under-payments (Hourly Under-payments x Weekly Hours Worked) | Total Under-payments |
|---|---|---|---|---|---|
| Jan. 1., 2023 – Aug. 31, 2023 | 34.71 | 40 | $10.00 | $400 | $13,884.00 |
| Sept. 1, 2023 – Dec. 31, 2023 | 17.43 | 26 | $11.15 | $289.90 | $5052.96 |
| Jan. 1, 2024 – Dec. 11, 2024 | 49.43 | 26 | $12.15 | $315.90 | $15,614.94 |
| Dec. 12, 2024 – Dec. 31, 2024 | 2.86 | 26 | $8.31 | $216.06 | $617.93 |
| Jan. 1, 2025 – Mar. 25, 2025 | 12 | 26 | $8.81 | $229.06 | $2748.72 |
| **Total** | – | – | – | – | **$37,918.55** |

---

[7] For the period from January 1, 2023, to August 1, 2023, Plaintiff's overtime hours are factored into the undersigned's calculation of her overtime wage damages. *See infra* Section IV.B; *see also Kim v. Kini LIC Corp.*, 806 F. Supp. 3d 277, 312 (E.D.N.Y. 2025) ("Under both the FLSA and NYLL, plaintiffs are entitled to overtime compensation of at least one and one-half times then regular hourly rate for ho[ur]s worked in excess of 40 hours per workweek.") (internal quotation marks and citations omitted).

28

Therefore, the Court finds that Plaintiff is entitled to $37,918.55 in unpaid minimum wages under the NYLL.

**B. Overtime Wage Damages**

Plaintiff seeks unpaid overtime compensation for the period of January 1, 2023 to August 31, 2023. *See* ECF No. 22 at 7–8.

"The plaintiff may not recover double damages for the same injury under both the FLSA and NYLL, though the plaintiff is entitled to relief under whichever statute provides the greater measure of damages." *Cooper*, 2024 WL 3344001, at *10. Under the NYLL, overtime compensation is calculated by multiplying all hours worked over forty in a workweek by 1.5 times the greater of (a) the employee's regular hourly rate, or (b) the applicable minimum wage. *See* N.Y. Comp. Codes R. & Regs. tit. 12, §§ 142-2.2, 146-1.4; *see also Guthrie v. Rainbow Fencing Inc.*, No. 21-CV-5929, 2022 WL 18999832, at *5, *aff'd*, 113 F.4th 300 (2d Cir. 2024) (applying NYLL overtime calculation).

As noted above, Plaintiff's regular hourly rate fell below New York's minimum wage (which was higher than the federal minimum wage) throughout her employment. *See supra* Section III.C.5. Under the NYLL, the undersigned's calculations for Plaintiff's unpaid overtime work are as follows:

TABLE 3. NYLL OVERTIME DAMAGES

| Time Period | Total Weeks | Average Hours | Hours > 40 | Total OT Hours | OT Rate (1.5 x Minimum Wage Rate) | Total Unpaid OT |
|---|---|---|---|---|---|---|
| Jan. 1., 2023 – Aug. 31, 2023 | 34.71 | 52 | 12 | 416.52 | $22.50 | **$9,371.70** |

Therefore, the Court finds that Plaintiff is entitled to $9,371.70 in unpaid overtime wages

under the NYLL.

### C. Spread-of-Hours Damages

Under the NYLL and HIWO, a restaurant worker is entitled to "one additional hour of pay at the basic minimum hourly rate" for each day their workday exceeds ten hours, regardless of their regular rate.  N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.6(d); *see also Chavez*, 2024 WL 4244087, at *10 (calculating spread-of-hours damages).  Plaintiff alleges that she always worked thirteen-hour shifts and never received spread-of-hours pay.  *See* ECF No. 1 ¶¶ 27, 29–30, 33–34; Chancy Decl. ¶¶ 3, 7–9.  Because Plaintiff's schedule exceeded ten hours every day she worked, she is entitled to one additional hour's pay at the applicable minimum wage for each workday.  *See* N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.6(d); *Chavez*, 2024 WL 4244087, at *10.  Thus, the undersigned's calculation of the Plaintiff's unpaid spread-of-hours pay is as follows:

TABLE 3.  NYLL SPREAD OF HOURS DAMAGES

| Time Period | Total Weeks | Days / Week Over 10 Hours | Total Days Over 10 Hours | New York Minimum Wage | Spread-of-Hours Damages |
|---|---|---|---|---|---|
| Jan. 1., 2023 – Aug. 31, 2023 | 34.71 | 4 | 138.84 | $15.00 | $2,082.60 |
| Sept. 1, 2023 – Dec. 31, 2023 | 17.43 | 2 | 34.86 | $15.00 | $522.90 |
| Jan. 1, 2024 – Dec. 11, 2024 | 49.43 | 2 | 98.86 | $16.00 | $1,581.76 |
| Dec. 12, 2024 – Dec. 31, 2024 | 2.86 | 2 | 5.72 | $16.00 | $91.52 |
| Jan. 1, 2025 – Mar. 25, 2025 | 12 | 2 | 24 | $16.50 | $396.00 |
| **Total** | – | – | – | – | **$4,674.48** |

30

Therefore, the undersigned finds that Plaintiff is entitled to $4,674.48 in unpaid spread-of-hours pay pursuant to the NYLL.

### D.  Unpaid Tips Under the FLSA and NYLL

Plaintiff requests $14,157.80 for unpaid tips under the FLSA and NYLL.  *See* ECF No. 1 ¶ 38; ECF No. 22 at 8.

As noted above, Plaintiff has provided text messages in which Moolenaar repeatedly acknowledged her outstanding tips and promised to repay her.  *See* ECF No. 24-1 at 5, 7–19.  On July 23, 2024, Moolenaar sent Plaintiff a text message acknowledging that Moods Cafe owed her $14,157.80 in tips.  *See id.* at 12.  Plaintiff asserts that she has not received any of those tips, and Defendants have not appeared or rebutted those allegations.  *See* Chancy Decl. ¶¶ 12–13.  For default judgment purposes, these factors are sufficient to establish that Defendants owe $14,157.80 in unpaid tips.  *See Kargar*, 2025 WL 4063721, at *15 (S.D.N.Y. Dec. 16, 2025); *Cortez v. Brand Name 99 Cents & Up Corp.*, No. 24-CV-5262, 2025 WL 1251297, at *7 (S.D.N.Y. Apr. 30, 2025) (explaining that a plaintiff's "burden is not high" to prove unpaid wages "where the employer fails to maintain complete and accurate records" and "may be met through estimates based on the employee's own recollection") (cleaned up).

Accordingly, the undersigned recommends that Plaintiff be awarded $14,157.80 for Defendants' violations of the FLSA and NYLL's tip provisions.

### E.  Liquidated Damages

The NYLL further provides that a prevailing plaintiff "shall" recover "liquidated damages" equal to one hundred percent of the total wages due, "unless the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law." N.Y. Lab. L. §§ 198(1-a), 663(1).  Because Defendants have defaulted and have not

31

demonstrated good faith, Plaintiff is entitled to an additional amount equal to her unpaid wages and tips in liquidated damages. *See, e.g., Chavez*, 2024 WL 4244087, at \*10 ("Because Defendants did not respond to the [m]otion, there is no showing of good faith, and liquidated damages are appropriate."); *Cooper*, 2024 WL 3344001, at \*11 ("Defendants have not answered or otherwise appeared in this action, so they have forfeited their opportunity to prove good faith.").

The sum of Plaintiff's unpaid minimum wages ($37,918.55), overtime wages ($9,371.70), spread-of-hours pay ($4,674.48), and tips ($14,157.80) is $66,122.83. *See supra* Sections IV.A-IV.D (calculating unpaid wages and tips); *see also Zabrodin v. Silk 222, Inc.*, 702 F. Supp. 3d 102, 123–24 (E.D.N.Y. 2023) (awarding two employees liquidated damages equal 100 percent of their unpaid minimum and overtime wages, spread-of-hours pay, and tips). Therefore, the undersigned finds that Plaintiff is entitled to an additional $66,122.83 in liquidated damages under the NYLL.

### F.  Statutory Penalties under the NYLL

Plaintiff seeks damages for Defendants' violations of the NYLL's wage notice and wage statement provisions. *See* N.Y. Lab. L. §§ 195(1), 195(3).

Should an employer fail to provide a wage notice within the first ten days of employment, an employee may recover $50 per workday that the violation occurs or continues to occur. *See id.* § 198(1-b). Employees can also recover $250 for each workday that a wage statement violation occurs or continues to occur. *See id.* § 198(1-d). Recovery is limited to $5,000 for each category of violations. *See id.* §§ 198(1-b), (1-d).

Here, Plaintiff was employed for over two years and never received a wage notice or wage statements. *See* ECF No. 1 ¶¶ 20, 25; Chancy Decl. ¶ 5. Thus, the undersigned

32

recommends that Plaintiff be awarded the statutory maximum of $10,000 for Defendants' violations of the NYLL's wage notice and wage statement provisions.  *See, e.g.*, *Andrade v. A to Z Hardware, Inc.*, No. 22-CV-7304, 2026 WL 825386, at *11 (E.D.N.Y. Feb. 19, 2026) (recommending a combined award of $10,000 for wage notice and wage statement violations).

### G.  Prejudgment interest

Plaintiff is entitled to prejudgment interest on her unpaid wages under the NYLL. *See* N.Y. Lab. L. § 198(1-a); *Chavez*, 2024 WL 4244087, at *11 (calculating prejudgment interest). Under New York law, prejudgment interest accrues at a statutory rate of nine percent per year. N.Y. C.P.L.R. § 5004(a). Where damages are incurred at various times, interest may be computed from "a single reasonable intermediate date." *Id.* § 5001(b). "Most courts in this district calculate simple prejudgment interest in NYLL actions from the midpoint date of the claims through the date judgment is entered." *Kim v. J&J Safetymate Corp.*, No. 22-CV-1070, 2025 WL 1384135, at *7 (E.D.N.Y. May 13, 2025).

Here, Plaintiff's NYLL claims for minimum wage, overtime, and spread-of-hours, and tip violations span from January 1, 2023, to March 25, 2025.  The midpoint of this period is February 12, 2024.  The total NYLL damages subject to prejudgment interest (exclusive of liquidated damages) are $66,122.83.  Prejudgment interest on that amount at a rate of nine percent per year equals $5,951.05 annually, or $16.30 per day. Accordingly, the Court recommends that, if this Report and Recommendation is adopted, Plaintiff be awarded prejudgment interest at a daily rate of $16.30 from February 12, 2024, through the date judgment is entered.

### H.  Post-Judgment Interest

Plaintiff is entitled to post-judgment interest as of right. 28 U.S.C. § 1961(a).  Thus, post-

judgment interest will accrue from entry of judgment at the federal statutory rate until the judgment is paid in full. *Id.* If the Court adopts this Report and Recommendation, the undersigned recommends that Plaintiff be awarded post-judgment interest at the federal statutory rate from the date of entry of judgment until payment is made in full.

### I. Attorneys' Fees and Costs

Plaintiff seeks an award of $10,025.00 in attorneys' fees and $1,448.00 in costs. *See* Rissmiller Decl. ¶¶ 12–27.

### 1. Attorneys' Fees

"Both the FLSA and NYLL are fee-shifting statutes which entitle a plaintiff to an award of reasonable attorney's fees and costs in wage-and-hour actions." *Solis v. Tropical Rest. Bar Inc.*, No. 23-CV-1707, 2024 WL 4271234, at *17 (E.D.N.Y. Sept. 19, 2024) (quotation marks and citation omitted). "District courts have broad discretion to determine the amount of attorneys' fees awarded, and the party requesting fees must submit documentation to support its request." *Perry v. High Level Dev. Contracting & Sec. LLC*, No. 20-CV-2180, 2022 WL 1018791, at *14 (E.D.N.Y. Mar. 16, 2022), *report and recommendation adopted*, 2022 WL 1017753 (E.D.N.Y. Apr. 5, 2022)

"The starting point of the attorney's fee calculation is the lodestar method, under which fees are determined by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Wright v. Miah*, No. 22-CV-4132, 2023 WL 6219435, at *14 (E.D.N.Y. Sept. 7, 2023), *report and recommendation adopted*, 2023 WL 6216541 (E.D.N.Y. Sept. 25, 2023) (citation omitted); *see also Millea v. Metro-N. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011). The lodestar "'is essentially what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively.'"

34

*Wright*, 2023 WL 6219435, at *14 (*quoting Streamlight, Inc. v. Gindi*, No. 18-CV-987, 2019 WL 6733022, at *18 (E.D.N.Y. Oct. 1, 2019)).

### a. Reasonable Hourly Rates

To determine a reasonable hourly rate, courts consider "market rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Hennessy by & through Hennessy v. 194 Bedford Ave Rest Corp.*, No. 21-CV-5434, 2022 WL 4134502, at *6 (E.D.N.Y. Aug. 8, 2022), *report and recommendation adopted*, 2022 WL 4134437 (E.D.N.Y. Sept. 12, 2022) (internal quotation marks and citations omitted). Presumptively reasonable hourly rates in this District are currently "$450-$650 for partners, $300-$450 for senior associates, $150-$300 for junior associates, and $100-$150 for paralegals." *Rubin v. HSBC Bank USA, NA*, 763 F. Supp. 3d 233, 244 (E.D.N.Y. 2025).

Fee applicants have the burden to establish the reasonableness of the requested hourly rates. *See Dominguez v. 4 Giron Constr. Inc.*, No. 22-CV-04730, 2024 WL 4250289, at *8 (E.D.N.Y. Aug. 15, 2024). Based on the billing records of Plaintiffs' counsel, Plaintiffs were charged for the work of two individuals at the following hourly rates and levels of seniority (*see* ECF No. 23-7):

TABLE 5. ATTORNEYS' FEES

| Individual | Seniority | Hourly Rate | Hours | Total Fees |
|---|---|---|---|---|
| Alex Rissmiller | "Managing Attorney" (Partner) | $450.00 | 11 | $4,950.00 |
| Jazly Liriano | Associate | $350.00 | 14.5 | $5,075.00 |
| **Total** | – | – | 25.5 | $10,025.00 |

The undersigned determines that the $450 hourly rate for Mr. Rissmiller, who is a 2015 graduate of the New York University School of Law and a partner level attorney, is reasonable as compared to $450 to $650 range for partners in this District. *See* Rissmiller Decl. ¶¶ 16, 20. As

for Jazly Liriano, she is a 2022 graduate of Columbia Law School and an associate level attorney. *See id.* ¶ 17. Although the demarcation between a junior and senior associate is inexact, the undersigned finds that—given her four years of legal experience and notable attention to this matter[8]—Ms. Liriano's requested hourly rate of $350 is reasonable. *See id.* ¶ 21.

### b. Reasonableness of the Hours Billed

Plaintiffs' counsel billed for 25.5 hours of legal services, all of which were related to this case, securing an entry of default, drafting Plaintiff's pleadings and the instant Motion, and interviewing Plaintiff. *See* ECF No. 23-7. Reviewing these billing records, the undersigned finds that this billing was "reasonable and not excessive, redundant, or otherwise unnecessary." *Burns v. Scott*, 635 F. Supp. 3d 258, 285 (S.D.N.Y. 2022) (internal quotation marks and citation omitted). Compared to other FLSA and NYLL cases involving default judgment motions, the undersigned also finds that Plaintiffs' counsel dedicated a reasonable number of hours to this case. *See Rodriguez v. MRC Bakery Corp.*, 802 F. Supp. 3d 393, 432 (E.D.N.Y. 2025) (collecting cases).

Accordingly, the undersigned recommends that the Court award Plaintiff $10,025.00 in attorneys' fees.

### 2. Costs

Plaintiff also seeks $1,448.00 for court filing fees ($405.00) and process server fees ($1043.00). *See* Rissmiller Decl. ¶ 26.

Plaintiff "bears the burden of adequately documenting and itemizing the costs requested." *Datiz v. Int'l Recovery Assocs.*, Inc., No. 15-CV-3549, 2020 WL 5899881, at *14 (E.D.N.Y. Mar. 12, 2020), *report and recommendation adopted as modified*, 2020 WL 3790348 (E.D.N.Y.

---

[8] Ms. Liriano billed 14.5 hours of the total 25.5 hours that Plaintiff's counsel billed for this matter. *See* ECF No. 23-7.

July 7, 2020) (quoting *Ganci v. U.S. Limousine Serv. Ltd.*, No. 10-CV-3027, 2015 WL 1529772, at *8 (E.D.N.Y. Apr. 2, 2015)). "Court fees reflected on the Court's docket and costs for which a claimant provides extrinsic proof, such as an invoice or receipt, are considered sufficiently substantiated, as is a sworn statement or declaration under penalty of perjury that certain amounts were expended on particular items." *Antoine v. Brooklyn Maids 26, Inc.*, 489 F. Supp. 3d 68, 105 (E.D.N.Y. 2020).

Here, Plaintiff has substantiated her process server fees with invoices. *See* ECF No. 23-8 (service invoices). In addition, the docket reflects that Plaintiffs paid a $405 filing fee. *See* ECF No. 1. Plaintiff's total requested costs, which are supported by documentary evidence, are reasonable compared to other cases in this District. *See e.g.*, *MRC Bakery.*, 802 F. Supp. at 433-44 (awarding $1,986.32 in costs for filing, service, mailing, photocopying, and translation fees); *Rosas v. M & M LA Solucion Flat Fixed Inc.*, No. 23-CV-1212, 2024 WL 4131905, at *20 (E.D.N.Y. Sept. 10, 2024) (recommending an award of $1,664.62 in costs for "court filing, service of process, and document translation fees")

Thus, the undersigned recommends awarding Plaintiff $1,448.00 for costs.

## V.   CONCLUSION

For the reasons set forth in this Report and Recommendation, the undersigned respectfully recommends that the Court grant Plaintiff's Motion for Default Judgment only on the claims set forth in Counts One through Nine in the Complaint, deny the motion as to Count 10 (alleged failure to pay timely wages under NYLL § 191) as this claim has been abandoned, and direct the Clerk of Court to enter judgment in favor of Plaintiff and against Defendants jointly and severally as follows:

> (1) $66,122.83 in compensatory damages for unpaid overtime and minimum wages, spread-of-hours pay, and tips under the FLSA and NYLL;

(2) $66,122.83 in liquidated damages under the NYLL;

(3) $10,000.00 in statutory penalties pursuant to NYLL §§ 195(1), 195(3);

(4) Prejudgment interest on Plaintiff's compensatory damages award of $66,122.83, calculated at a per diem interest rate of $16.30 from February 12, 2024, until the date the Clerk of Court enters judgment;

(5) Post-judgment interest calculated from the date the Clerk of Court enters judgment until the date of payment, using the rate set forth in 28 U.S.C. § 1961(a); and

(6) $10,025.00 in attorneys' fees and $1,448.00 in costs.

## VI.    OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2), the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. *See also* FED. R. CIV. P. 6(a) & (d) (addressing computation of days). Any requests for an extension of time for filing objections must be directed to Judge Choudhury. FAILURE TO FILE TIMELY OBJECTIONS SHALL CONSTITUTE A WAIVER OF THOSE OBJECTIONS BOTH IN THE DISTRICT COURT AND ON LATER APPEAL TO THE UNITED STATES COURT OF APPEALS. *See Thomas v. Arn*, 474 U.S. 140, 154–55 (1985); *Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *McConnell v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009); *F.D.I.C. v. Hillcrest Assocs.*, 66 F.3d 566, 569 (2d Cir. 1995).

<strong>SO ORDERED</strong>:

Dated: Central Islip, New York
     May 26, 2026

/s/ Lee G. Dunst
LEE G. DUNST
United States Magistrate Judge

38